For the Appellant, we have John McLaughlin for the Appellee, Helen Hogarth, please proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is John McLaughlin and I represent David Engst. He is the Appellant and he is the Petitioner in the Trial Court. This appeal is from an order granting exclusive possession of the marital residence to the Appellee, Michelle Engst, the Respondent in the Trial Court. In my mind, there are three issues in dispute on this appeal. One, what is the standard of review on appeal as far as exclusive possession goes? Two, whether the Trial Court's order granting exclusive possession of Ms. Engst was against the manifest weight of the evidence. And three, whether the Court erred in denying Mr. Engst's motion to dismiss. The first issue is, I won't take too much time, I don't think it warrants it, but counsel cites the Lovenson case in her response brief to support the idea that it's an abusive discretion standard. But I'll simply recite the Lovenson case and also the Hofstadter case for the proposition that it's the manifest weight of the evidence standard. And that's all the time I'll take with that issue. As to the second issue in dispute, namely whether the Trial Court's order of exclusive possession was against the manifest weight of the evidence, I like what the Lovenson court had to say. It said, quote, we are not free to set our own standards, but are bound by that which the legislature has set forth by statute. And the reason why that resonates with me today is that in the response brief, and I think today, counsel will encourage this court to set a new standard to break away from the rest of the opinions of the Illinois appellate court. And because the burden, she states, is too harsh to gain exclusive possession, the route is too difficult. And the thing is that there already are two avenues for exclusive possession of the marital residence, namely the IMDMA, the divorce statute, and the IDVA, the Domestic Violence Act. This would be 701 of the IMDMA and 214b2 of the Domestic Violence Act. The case before us today is regarding the divorce statute. Under that statute, there must be a signed verified petition, there must be due notice, a full hearing, and a finding that the continued cohabitation of both spouses in the same residence jeopardizes the mental or physical well-being of either spouse or the children. The burden under the Divorce Act is far greater than that under the Domestic Violence Act. In fact, the Domestic Violence Act statute explicitly exempts a court from being bound by the burden or the findings necessary under the divorce statute. There's no jeopardy finding that must be made, simply that you have an abused person, and abused is quite expansive in defining that. But here in this appeal, we are proceeding under the Divorce Act since counsel chose that act to proceed under in the trial court. There must be a full hearing, and it's not summary in nature. I think this speaks to how important the legislature thought this issue was. Some issues in the Divorce Act can be summary in nature. For example, interim fees under 501c1 can be a summary presentation of evidence. But this requires due notice and a full hearing. In my brief, the facts of... Wasn't there notice and hearing in this case? There was. So why do you keep emphasizing that? It's to differentiate between... I think I'm saying this to reinforce how important or what a burden the legislature intended this to be. It's not something that should be customary or usual. There are some burdens here that they've placed on the issue of exclusive possession that they haven't placed, or they've exempted other issues out of. What other issues have they exempted out of? Well, for example, the interim fees under 501c1, it can be summary in nature, the hearing. Still have to have a hearing, don't you? Yes. Go ahead. Under 501c1, it can be summary in nature. And so those hearings are usually very quick. Evidence is usually proffered, and witnesses usually don't take a stand. Are you suggesting the trial court precluded you from presenting evidence that you otherwise would have been able to present, but for a trial court adverse rule? Not exactly. Again, I'm pointing out the fact that there needs to be a full hearing as opposed to other issues in the Divorce Act. Well, there was a full hearing. You presented what you wanted to present. So your argument is the trial court made the wrong ruling? Correct. And on our motion to dismiss issue, that's my third issue, there was not facts pled in the pleading. Where is the requirement that there be facts pled in the pleading? Illinois is a fact pleading state. This is not the pleading. This is not you injured me on your grounds, and therefore I hear the facts supporting it. This is a motion within a preexisting case seeking some specific relief. What is your authority that 2615 even applies? The Illinois Divorce Act incorporates the civil procedure rules, unless it's specifically modified therein. You mean 2615 applies to all motions made in pending proceedings? All pleadings. What does that mean? Under 701, it must be a verified petition, and so that would be a pleading. What case stands for the proposition that a motion for exclusive possession, or I guess a motion to change custody or anything else, is subject to the requirements of the Civil Practice Act so that a motion to dismiss under 2615 might lie? I don't have authority as far as case law. We'd be the first to so hold? Pardon? We would be the first to so hold? The Divorce Act itself incorporates the rules of civil procedure. We would be the first court to so hold, to grant the relief you're requesting, saying, yeah, trial judge, you should have dismissed this motion for exclusive possession of the residence because it failed to comply with stating a cause of action, and it should have been dismissed under Rule 2615. You have no precedent for any such ruling, and we would be the first case to so hold? To my mind, yes. The facts in this case are as follows. The two parties' testimony is the appellant testified that there was name calling on the part of both parties, but he could not recall the last incident. There was no physical abuse or aggression beyond a mutually described brushing of each other in a doorway. The parties worked together in getting their two minor children to many activities. The appellee testified that the petitioner made derogatory comments to her about her work in cooking, and she felt afraid at times because she never knew what the petitioner might do next. She could not recall the last time she used profanity against the petitioner, but may have done so. The petitioner has never physically struck her. She feels like the petitioner is condemning her when he whispers to himself or asks her why a light was left on, and she feels like the children are feeling more stress and are not able to focus in the recent past. The court here, at the same hearing, awarded temporary joint custody, and under the statute there must be a finding that these folks can effectively communicate with one another and cooperate in the best interest of the children. So that speaks to the level of animosity or jeopardy that would exist here if the court also that same day found that these folks can get along and have discussions about their children and cooperate and communicate. Ms. Hogar, in her brief, attacks the case law of the Illinois Appellate Court on two grounds. One, she says the facts in all those other cases, including Levinson, Hofstetter, Lima, are just different. And my answer is, of course they are. But as the Levinson court found, that this wealth of case law that's consistent among the districts is helpful. When you say a wealth of case law, we're looking at four cases that deal with this issue, right? Correct. Okay. Correct. But I think the wealth comes from that they're all cohesive and they're all consistent with one another. I can't pick one out that they all cite each other, none of them differentiate, saying this court was wrong or that court was wrong. I would cite them all. I did cite them all in my brief because every single case, all four on point, are consistent with my position today. What do you argue is our standard of review? Manifest weight of the evidence. What does that mean? It means a judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. So based on the evidence before Judge Reinert, no reasonable person could have decided that exclusive possession of the residence in Michelle would be the appropriate finding? I believe that would be the standard or the inquiry. Is that a yes, counsel? It's a no. It's okay. Then where have I misstated what we'd have to conclude? I believe that inquiry would be if it was an abuse of discretion standard, that no reasonable person would ever conclude the same. So there's a difference between the abuse of discretion and manifest weight of the evidence? Yes. In my answer, when I was reading the standard, I was reading right from Blevinson. Didn't they speak about reasonable decisions there, the last part? It did say, so I'll read again, judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. They did mention reasonable. I believe the abuse of discretion standard is higher. No reasonable person would ever find that way. I've been at this business a long time. This is my 25th year in this court, and I get to see a case where the difference between abuse of discretion and manifest weight of the evidence has never been clear to me or manifested. So it struck me as essentially we have to conclude the decision below was unreasonable based upon what was before the trial court. And it seems to me that's essentially what you need to argue here. Why was it unreasonable? Correct. And I would agree that's the standard set out by Blevinson. It needs to be unreasonable. The second attack on the case law from counsel is that the burden is too high. Well, my response would be it needs to be high. You are kicking someone out of their home that they own. You're separating them from their children before a final hearing in the divorce. These things are drastic. The burden should be high. Jeopardy should be proven. This shouldn't be an in-and-out thing. It should be the exception as opposed to the rule. Ms. Ogar, in her closing statements to the trial court, I think hit on something. She said, quote, had he just hit her, maybe her case would have been somewhat easier. The fact is that there was none of that in this case. Ms. Ogar also points out that under 102 of the Divorce Act, that these words are supposed to be construed liberally to fulfill the purposes. But there are a lot of purposes in the Divorce Act that, if this is to be applied liberally to promote those purposes, it would encourage my client not being removed from the home. Namely, safeguarding the family relationships, mitigating the potential harm to the spouse and the children, securing the maximum involvement of both parents, and making provision for the preservation and conservation of assets during litigation. Rents now being paid by my clients, reducing the marital estate. By both parties' accounts, my client was very involved with the children, especially the driving around the transportation with these two girls and all their activities. I'd like to speak a little bit about this opportunity this court has for a new standard. There is but one appellate court in Illinois, and Justice Harrison in Alexan, the village of Round Lake Park, stated that the divisions or the districts have nothing to do with jurisdiction or, well, the court's authority. It's political divisions. And so I think a consistency should be encouraged. I don't think a striking out on a new road should be encouraged, especially when already there are several courts of the, well, districts that have consistently ruled. Again, Ms. Ovar takes issue with the burden that is placed by the statute. The judiciary is not the place to correct that. As Levinson said again, we are not free to set our own standard, but are bound by that which the legislature has set forth by statute. It would be the legislature she would need to contact to right this wrong that she feels is an undue burden. As far as the motion to dismiss, the Civil Procedure Act does apply to the Divorce Act. Now, we do have some exceptions that the legislature made where you don't need to plead the facts. For example, in 403 of the Divorce Statute, dealing with Browns, the legislature said all you need to do is list the name of the Browns. You don't need to list the supporting facts. It goes on to say if the other party wants a bill of particulars, they can ask for it, but all you need to do is plead the facts. They did not do this in 701. So one can assume that the legislature meant that the Civil Procedure Act would apply. You do need to list the facts that support your legal conclusions or your cause of action. Ms. Ogar at trial stated that Illinois is a notice pleading state. She stated that she was going forward on her notice pleadings, but Illinois is a fact pleading state and there were no facts pled. Only the legal standard set out in the statute. And she did not sign her pleading. It wasn't a signed verified pleading until the day of the hearing. The trial court allowed her to walk up and sign it that day. So under a de novo review, I believe that the motion to dismiss should have been granted. The court took it up, denied it, and it should have been dismissed. Mr. McLaughlin, just a point of clarification here. I want to make sure I understand your client's position as to the trial court's decision when it rendered its ruling from the bench. It indicated exclusive possession of the home to the petitioner, which would not be accurate. Is that correct? I don't know if either one of us has noticed that before. But that's how it reads in the transcript. And then in the court's docket entry, October 25, 2013, if I'm deciphering this correctly, he writes, exclusive possession to our respondent. Is that your understanding and is that your position that the court ruled on that date in favor of respondent as to exclusive possession? Yes, and all parties have acted consistently. Thank you. Thank you, counsel. You will have rebuttal. Ms. O'Rourke. May I please support? I'm kind of happy to get up here and be able to clarify what my actual position on this case is. My actual position on this case is not to change the statute. My actual position on the case is not to set a new standard. But I would like this court to acknowledge, and I want to bring to the court's attention, how important I believe this case is going to be. So what I'd first like to do is just address this case that is before the court, because to me it seems a fairly simple case. So in my argument I'd like to just talk about the facts, the cases, and then I want to just address the importance, because I do think this is an exceedingly important case. So let's look at the facts. My facts, and they're in my brief, they're on pages 5 and 7, where I summarize the facts of the case. My client at length talked about the tension and the stress. She talked about walking on eggshells. She talked about derogatory comments that had been made to her on a daily basis. There had been physical aggression in this case. Counsel said there was one time where they bumped in a hallway. No. He bumped her in a hallway, he blocked her in a bathroom, would not let her out, and he had a habit of putting his hand across doorways so she could not come in and out of doorways. Is it hitting? No. I say in my brief. He never hit her. I agree, it would have made my case easy. But this was this kind of bizarre, increasing behavior. And the court acknowledged that. That is why the standard of review is so important in this case. Because Judge Reiner sat and saw this. He saw the parties. He saw how their demeanor was. He saw how their behavior was. And I reference in my brief that he discusses it. He says, look, this is a close case, but it is coming down to what I was able to observe. And I reference that in my brief. He references it when he is making his ruling about what he is able to observe. And there is kind of some insidious weirdness that is going on here. And I wish it came across better on the transcript. Where she would talk about the fact that her husband would talk baby talk. And then he'd get really, really loud. And those were the sort of things that you can't necessarily when that is being described. Those are the sorts of weird behaviors that she was talking about. Now I am not asking for you to do anything in this case but enforce the statute. And the statute says only in cases where the physical or mental well-being of either spouse or their children is jeopardized by the occupancy by both parties. And I think we met that burden. I think the judge sat. He observed. He listened to the testimony about the daily verbal aggression. He listened to the testimony about the cursing and use of foul language. He listened to the testimony about the physical aggression. My client testified she was physically afraid of David. She stated that. She said the threat of physical aggression is constant. She also testified as to how this affected her girls. That the girls had witnessed the aggression. That they had witnessed the verbal statements to her on a daily basis. And that it had a negative effect on her. My brief states some of the names. I have a young child here. But the names that she was called and the intimidation. On cross-examination then counsel comes in and says well what about these pictures? And I reference it in my brief but what you were unable to observe was really the idea that look here is a picture of the child trying to do her homework and mom is writing in her journal nearby. That to me, and Judge Reiner said the same thing, shows more about the person taking the photograph. Than the person who is photographed. And so he acknowledged some of this and in his ruling he talked about the fact of specifically about these parties' demeanors. And I do believe that exclusive possession should not be granted willy-nilly. I don't believe that this should be some sort of lower burden as counsel indicates. But I do believe that in this particular case we established that the physical and mental well-being of my client and the minor children was jeopardized by the continued occupancy as the tensions and stress were rising. And she talks about that. These physical aggression, the verbal aggression, what the kids were going through. I believe we've proven our case. I believe that Judge Reiner made a correct decision. And that certainly he should not be reversed. So that's this case. I honestly think it's a fairly simple case if this were just a run of the mill case. The facts are laid out on my brief on pages 5 and 7 where my client testifies as to what she went through. I did then want to talk about the cases because there's only four cases. And this is how it goes in the practice of law because this is pretty much the area I deal in on exclusive possession. We've been dealing with the same three cases for quite a period of time. Levinson is relatively new. But we've dealt with Lima, Lambert, and Hofstetter. And this is how it goes. Hofstetter is the 1981 case where the guy takes an iron, hits his wife in the head with it, hits her with a gun, hits her with his fist, and guess what? She got exclusive possession. So every time, in every case I've ever been involved in, and maybe I've done it myself when I don't want exclusive possession, we start with Hofstetter as the goal. Okay, if he hits her with an iron, hits her with a gun, hits her with his fist, she can have exclusive possession. Then we go to Lima and Lambert. And on those, when you're arguing this to a judge, you say, well, Lima, there was non-consexual intercourse. Oh my gosh, and she still didn't get exclusive possession? Because that's how it's presented in the brief. That's how, I have rarely brought something to show you guys before, but you recognize this book. That's how it's referenced in this little book as well. That Lima, there's non-consexual intercourse. What book? Oh, sorry. It's kind of like my little, I think most practitioners in the area of family law, most judges who deal with family law on a daily basis, have this on their bench. What? Who puts it out? What is it? It's Westlaw. It's just the family law practice. It's kind of one that a lot of attorneys and a lot of family law practitioners use. And the reason that's important is because, again, I want to point out to this court that this is how it goes. Then you go on to Lima that talks about this non-consexual intercourse. Well, if you actually read the Lima case, it was three years before. She didn't say it was non-consexual. She said she felt it was not very romantic. For three years after that not very romantic sex, they continued to reside together. They continued to take meals together. She continued to do his laundry. Oh, and another thing that's important in Lima that people have a tendency to overlook, she testified, I don't care if he keeps living in the house. But nonetheless, when we're trying these cases, and you can see it in the brief, oh my gosh, Lima has this non-consexual sex component. Then they go on to Lambert, the next case. The Lambert is, oh my gosh, she was released from hospitalization, and she was in a mental hospital, and she wasn't taking her meds. And the court didn't give exclusive possession there. I don't think these standards are this high. I think if you read Lambert, the same thing is true. The judge in that made a finding that she seemed perfectly normal. These are the judge's findings, that she was capable of caring for her children, but goes on to say, but you know, if she's not taking her meds, that seems like a bad thing. The appellate court said you had no, you made a finding, she was fine. You have no expert testimony. You only have a husband saying, well, she wasn't taking her meds. And on that, we're reversing you, because of your own findings. So, I'm not attacking these cases. I'm simply explaining these cases. And I want this court to understand that for years, we've dealt with those three cases. Hofstetter, which you hit them with an iron, you get exclusive possession. These other two cases, including non-consensual sex, and mental problems, and hospitalization for those mental problems, you don't get it. And so, from that, people have gotten this idea that there is this very high standard. I think the standard is what's set forth in the statute itself, which is, is continued occupancy by both parties causing mental or physical jeopardy to one of the parties or the children? That's it. But, because we only have these few cases, that's how this, you know, practical way, this is how this has shaped up over the years. When we go in and we argue these cases, this is how these cases are argued. Recently, we've had Levinson also come down. Levinson, again, turns on its own fact. In that case, and I don't think Levinson has anything to do with this case, but since it's been brought up. Levinson, the parties were nesting by agreement. A nesting situation is where the children stay in the home, father comes for one week, mother moves out. Mother comes for one week, father moves out. So, the children stay in the nest, and the birds fly in and out, the parents. So, that was a nesting situation by agreement. The parties were not actually living in the same circumstances. And, if you read Levinson, Levinson has an expert that says, don't change this at this time. It will be harmful to the children if you make a change at this time because they were getting ready to go back to school. So, the Levinson case is kind of different because it's a nesting case. But, these other cases, that's how this has been kind of shaken out over the years, is that you have these almost impossible situations where there would be criminal charges. By the way, Hofstetter, I believe, was decided in 1982. Lima and Lambert were in 91 and 94. And, I do think that since 1992, things have changed. I think people take domestic, courts, I don't mean to say people, courts take domestic violence seriously. If the Hofstetter case were coming down today, we'd have criminal charges, no doubts about it. None. We wouldn't be talking about exclusive possession. We'd be talking about the criminal charges facing, that the husband was facing for pistol whipping his wife, hitting her with an iron, and hitting her with his fist. But, why? Here's the key for this court. It is highly unlikely that you are going to be hearing very many We get exclusive possession done. If we don't get it done and we go to court and there is an adverse ruling, generally everybody knows it's going to take about six months to wrap up the case. So, put your head down, get to the end of the case, and let's get the case resolved. This case was taken up on appeal. So, you have an opportunity now to sit and say, number one, we do believe our trial judge, who was in the position of observing these parties, made the proper ruling. We do believe that the trial judge was able to find, and the evidence presented, that physical or mental well-being of either spouse or their children was jeopardized by the continuous occupancy by both parties. So, that is the simple part of this case. But, as you write the case and as you ponder this, I submit to you that this is going to be one of the few cases you have to issue a ruling on that issue of exclusive possession because we rarely take these up. Is that necessary? And I just want to interject here, because is it your explanation for the relative scarcity or paucity of cases interpreting Section 701 that the statute itself is fairly straightforward, using language that may not be of substantial help in resolving these issues for the trial court? Absolutely. And that is how, quite frankly, we overcome this kind of, when we are looking for exclusive possession, how we kind of overcome it, by explaining away these cases and saying, judge, look what's in front of you. And quite frankly, that's why trial judges continue to grant exclusive possession, because some trial judges, quite frankly, are a little worried about it. But, yes, I do believe that the statute itself, that is how I have always argued the case. The statute, when I have it at a trial level, the statute itself is what the court should be paying attention to. And all of these are fact-driven by the facts of their own cases. But, as you can see, even from that brief, the brief is, wow, look how hard this is. I'm not saying the statute, I have never said that you need to take a new standard. I have never said that this is too hard of a standard. What I am saying is that in supporting a trial judge at least gives us something to hang around that says, no, you can get exclusive possession without there being an iron, a gun, and fists. I did, in my brief, bring up the fact, and again, Justice Steigman, this is a book that many people rely on, that in her commentary she says it's easier to get an order of protection. Who wrote it? Mueller Davis, Jody Meyer, Yaziski, James Rubens. It comes out yearly, a lot of us use it. I don't believe that, and I don't believe that the judges I appear in front of on a regular basis would ever believe that. But, nonetheless, if this upside down, it really puts this upside down to even think that an order of protection would be easier to obtain than an exclusive possession. And quite frankly, if I am representing the person who is being kicked out of the house, I'd rather have an exclusive possession order than an order of protection order, because an order of protection has so many components, the criminal violations. I mean, it's kind of crazy to think that she is should seek an order of protection as opposed to exclusive possession. I bring that up only because that is her position. I actually, Justice Harris, believe more strongly as you do that the statute says what the statute says, that I as a competent attorney can explain to the court why these cases are different than the case before the court. But nonetheless, that's where we find ourselves in the scope of where the law is today in Illinois. And so, because that's where we find ourselves, I bring that to you as a practitioner to tell you this is what practically happens to us. So that as you are mulling over this case and deciding this case, you can keep that in mind. But if we are just dealing with this case itself, I think it's fairly straightforward. The evidence as to the difficulties my client was going through and the stress she went through are laid out in my brief on 5 and 7. The court, I've laid out what the court said in terms of being able to observe the demeanor of the parties. So this case in and of itself seems to me to be fairly simple. Judge Reiner did not abuse his discretion. There was a lot of evidence, quite frankly, which supported granting exclusive possession of the house to my client. Counsel, I note the statute speaks to the necessity of granting exclusive possession. Does it speak to which spouse should have the exclusive possession? It does not. But I think in practicality, judges normally have the house go with whoever is going to have custody of the one spouse by eviction from or restoration to the marital residence. And it doesn't weigh the hardships, which is what I think counsel was talking about. In an order of protection case, there's a weighing of the hardships. Here it just says is one of the My argument, if the court has any questions, if not, I strongly urge you to look at the cases. They are distinguishable factually. The statute itself is fairly straightforward. And I believe this case is very straightforward in terms of you just deciding this case. But there is an added component in the fact that there are a limited number of exclusive possession cases in change of law. Thank you. Rebuttal, please? Thank you, Your Honor. I would also encourage a full reading of the four cases, because I do take issue with the description of those Lima, I think, is an important case here, because the wife got on the stand on Lima, described the stress in the home, how it made her diabetic reactions manifest themselves more, she was going downhill, they occurred more frequently. Part of your case is sui generis, counsel. What is it about this case that should lead us to conclude that Judge Reinhardt's decision was unreasonable? Because 11 cents stands for the proposition that it's the plain meaning of the word jeopardy. The mental well-being or the physical well-being is in jeopardy. Okay. On this record, what was unreasonable about the judge concluding that the mental well-being of the children was in jeopardy? In my brief, page 9 through 11 are my statement of facts. Well, how about just answering my question, counsel? Because nothing described in the testimony under the plain meaning of jeopardy would satisfy the burden in my mind. I won't go through them all, but it's in pages 9 through 11 I've summarized what both parties testified to, and none of those rise to the same conclusion. The Mueller-Davis book, Ms. Ogar produced a paragraph of it in her response brief, but the paragraph above, she provided a paragraph on subsection 2, but subsection 1 is entitled Stringent Requirements, and it says the standard for granting exclusive possession of a marital residence to a spouse under section 701 is of a high order. And she goes on to describe how hard it is, then in section 2 she said that's why most, where there's abuse present, that's why most petitions are brought under the Domestic Violence Act, because it's a far less standard than in the Marriage Act, or the Divorce Act, which again, the Divorce Act exempts the court from being bound by the burdens of the Divorce Act. And again, some of these cases, listen, I would say is differentiated in that they did proceed under the Domestic Violence Act. The other three cases, Lambert, Hofstetter, Levinson, those were the Divorce Act. And so since they are different, I would ask this court to keep that in mind when reviewing those cases and applying those facts or those cases to this case. They are different in that way. But the Divorce Act is a high burden. In the middle, when there's no abuse present, or the petitioner, sorry, the person seeking relief isn't alleging abuse or wanting to go the Divorce, sorry, the Domestic Violence Act route, they're setting themselves up for a huge burden to survive. Why is this a huge burden? Why shouldn't we take the legislature at its word when it said if there's, Judge, if you find that the person is jeopardized by this arrangement, you should grant them a petition? In my mind, that's a huge burden. Well, I don't understand it. You tell us it's a huge burden. Well, why don't we just say, Judge, if their mental state is jeopardized by parents acting badly, and if you so conclude, then you should grant the petition. What's the issue here? I'll answer that. In most divorces, there is some stress. There is some awkwardness in the home. There is some incivility. And so, if this took some stress, some awkwardness, every divorce would result in one of the parties being evicted from the home quite quickly. I don't think that's what the legislature intended. I think that's why they used the word, if it jeopardizes their mental or physical well-being, because I have seen very few divorces where people are smiling. You think the people who wrote the statute didn't understand this concept that you've just explained to us? I think they do, and that's why they used the word jeopardize, and not, for example, the words like, if it affects their mental well-being, or if it affects their... I'd have to crack open the dictionary. Thanks to both of you. The case is submitted. The court is in recess.